IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00789-PAB

BRIAN L. MEDINA,

  Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

  Defendant.
_____

## ORDER REVERSING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE AND REMANDING FOR FURTHER PROCEEDINGS
_____

  This matter comes before the Court on plaintiff Brian L. Medina's Complaint

[Docket No. 3], filed April 17, 2008.  Plaintiff seeks review of the final decision of

defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for

supplemental security income benefits under Title XVI of the Social Security Act (the

"Act"), 42 U.S.C. § 1381-83c.  The Court has jurisdiction to review the Commissioner's

final decision under 42 U.S.C. § 405(g).  The matter is fully briefed, and I find that oral

argument would not materially assist the Court in the disposition of this matter.  For the

reasons stated below, the Commissioner's decision is reversed and the case is

remanded for further proceedings in accordance with this Order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born in August of 1983.  R. at 53.  There is evidence that, during his teenage years, plaintiff suffered some degree of head injury from three separate incidents: a motor vehicle accident, an assault, and a bicycle accident.  *See*, *e.g.*, R. at 60, 118.  The record seems to indicate that the effect of these injuries did not persist as a cause of physical impairment.  *See*, *e.g.*, R. at 116, 121, 123, 124, 128.  However, there is some debate about whether these injuries resulted in mental impairments, including a behavioral disorder and a learning disability.  During this time, plaintiff also was treated for a stab wound in the chest.  *See* R. at 106-14.

Plaintiff filed an application for supplemental disability benefits on September 11, 2003, alleging he was unable to work as of August 15, 1998 due to what were believed to be the results of his head injuries and the stab wound.[1]  R. at 53, 60.  After plaintiff's claim was denied at the initial level, an Administrative Law Judge ("ALJ") conducted a hearing on August 11, 2005 and issued a decision on October 18, 2005 denying plaintiff disability benefits.  R. at 35-39, 251-75.  On August 25, 2006, the Social Security Administration's Appeals Council ("Appeals Council") vacated the ALJ's decision and remanded the case for further development of the record and elaboration regarding the ALJ's reasoning.  R. at 206-08.  On August 21, 2007, a different ALJ, assigned to the case on remand, conducted a second hearing.  R. at 276-86.  On August 27, 2007, the new ALJ issued the second denial of plaintiff's claims.  R. at 15-23.

---

[1] Although plaintiff's Social Security application initially listed his head injuries as the reason for his disability, it is clear that he intended that listing to encompass the mental impairments that had been diagnosed and, at least on occasion, had been directly associated with the head traumas.  *See* R. at 70.

On February 26, 2008, the Appeals Council denied plaintiff's request for review of the second ALJ decision.  R. at 7-9.  Therefore, the second ALJ denial stands as the Commissioner's final decision on this matter and, because plaintiff filed a timely appeal with this Court, the Commissioner's final decision is now reviewable.  *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  In addition to a reversal for lack of substantial evidence, a district court may reverse the Commissioner's final decision where the ALJ

failed to apply the correct legal test.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th

Cir. 1993).

### 2. Disability Under the Act

A person is disabled within the meaning of the Act if he is unable "to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A) (2006).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).

The Commissioner has established a five-step sequential evaluation process to

determine whether a claimant is disabled.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th

Cir. 1988); 20 C.F.R. § 416.920.  The steps of the process are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §

404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn of the claimant's own version of those facts."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

**B.  The ALJ's Decisions**

Following a hearing at which a Vocational Expert ("VE") testified, the first ALJ to review plaintiff's claim found that the plaintiff had the RFC

> to perform medium exertional work.  He can lift/carry 50 pounds occasionally and 25 pounds frequently.  He can sit/stand/walk for 6 hours in an 8 hour workday.  He can perform simple, routine, repetitive tasks with no more than simple written and spoken English and occasional public contact.  He has mild restrictions in activities of daily living, mild difficulties maintaining social functioning, moderate difficulties in maintaining . . . concentration, persistence or pace and he has never had an episode of decompensation.

R. at 203.  Based on this RFC and plaintiff's status as a "younger individual" with a "marginal education" under the Social Security regulations, *see* 20 C.F.R. §§ 416.963 & 416.964, the ALJ determined that plaintiff had the RFC to perform a significant range of

medium work.  *See* R. at 203.  The ALJ identified three jobs which plaintiff could perform, and thus concluded that plaintiff was not "disabled" under the Act.  R. at 203.

The Appeals Council reviewed this opinion, vacated it, and remanded plaintiff's claim for further review.  R. at 206-08.  The Appeals Council faulted the ALJ for his treatment of the medical opinion evidence and resulting RFC calculation.  R. 206.  The Appeals Council instructed the ALJ on remand to give further consideration to the treating and examining source opinions, give further consideration to plaintiff's RFC, and, if necessary, obtain additional VE testimony.  R. at 207.

Following the remand from the Appeals Council, the newly assigned ALJ conducted a brief hearing at which only the plaintiff testified; the ALJ did not seek the testimony of a VE.  R. at 276-86.  On August 27, 2007, the ALJ issued his decision, finding that the plaintiff was not disabled under the Act.  At step one, the ALJ concluded that plaintiff had not been engaged in substantial gainful activity since September 3, 2003.  R. at 17.  At step two, he determined that plaintiff had two severe impairments: borderline intellectual functioning and bipolar disorder.  R. at 17.  At step three, the ALJ concluded that plaintiff did not have one of the listed impairments or a combination of impairments under 20 C.F.R. § 404 or their medical equivalents.  R. at 23.

The ALJ then turned to the task of determining plaintiff's RFC.  According to the ALJ, plaintiff had the RFC to

> perform medium work, lifting/carrying 50 pounds occasionally and 25 pounds frequently, that has simple, repetitive tasks, and does not require more than simple written or spoken English, and does not require more than occasional public contact.

R. at 17.  In arriving at this RFC, the ALJ discussed the records and opinions from four medical sources: Dr. Richard Rivera, M.D., plaintiff's treating physician; Steven Quakenbush, a physician's assistant practicing with Dr. Rivera; Dr. Richard Madsen, Ph.D., a state consultative examining doctor; and Dr. James Wanstrath, Ph.D., a state disability examining doctor who reviewed some portion of the record in this case.

At step four, the ALJ found that plaintiff did not have past relevant work as it is described in 20 C.F.R. § 416.965.  R. at 22.  At step five, the ALJ concluded that plaintiff was not disabled under the Act because, according to the Medical-Vocational Guidelines (the "Grids"), jobs which plaintiff could perform existed in significant numbers in the national economy.  As the ALJ explained his conclusion,

> [i]f the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.25.  However, the additional limitations have little or no effect on the occupational base of unskilled medium work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

R. at 23.

### C.  Plaintiff's Objections

In his appeal, plaintiff asserts four grounds for challenging the ALJ's finding of no disability: (1) the ALJ failed to properly weigh the opinions of the treating physician against conflicting opinions; (2) the ALJ did not have a proper reason for rejecting the opinion from the consultative examiner, Dr. Madsen; (3) the ALJ's RFC finding is not consistent with the opinion of the State agency psychiatrist which was accorded significant weight by the ALJ; and (4) it was not proper for the ALJ to rely upon the Grid Rules in the presence of mental impairments.  Pl.'s Opening Br. [Docket No. 12] at vi-

viii.  For the reason stated below, I find that plaintiff's objections have merit and, as a result, reversal of the ALJ decision is warranted and remand for further proceedings is necessary.

### 1.  The Treating Physician's Opinion (Dr. Rivera)

The ALJ determined "that the records from [Dr. Rivera and Mr. Quakenbush] do not support the assessments made by . . . Dr. Rivera and Mr. Quakenbush and are, in fact, contradictory to these assessments, nor do the records support the severity of impairment alleged by the claimant."  R. at 20.  The ALJ also discussed what he perceived to be a disconnect between reports of the effects of plaintiff's head injuries and assessments of mental impairments that may follow from those injuries.

The ALJ is correct that there is conflicting evidence regarding the source of plaintiff's reported mental impairments.  For example, Mr. Quakenbush, the physician's assistant, noted in a July 24, 2003 Medical Reexamination form that plaintiff had "a behavioral and learning disorder *from* head trauma 1995 - 1998 and age 13 from bike accident."[2]  R. at 178 (emphasis added); *see also* R. at 116 ("The patient apparently has had multiple head injuries resulting in his apparent[ ] learning disabilities."); R. at 245 ("Brian Medina has a history of previous significant head trauma with resultant short term memory loss.").  However, instead of explicitly connecting the head traumas

---

[2] Mr. Quakenbush is not a medical doctor and, as such, he is not considered an "acceptable medical source" for establishing the existence of an impairment and may not be given controlling weight.  *See* 20 C.F.R. § 416.913(a); *Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008).  However, the Commissioner still must consider these opinions in determining the severity of a claimants impairments and may not perfunctorily dismiss them.  *See* 20 C.F.R. § 416.913(d)(1); *Bowman*, 511 F.3d at 1274-75 (citing Social Security Ruling 06-03p, 2006 WL 2329939).

and plaintiff's mental impairments, most of the records from Dr. Rivera and Mr. Quakenbush simply list them together as diagnoses or "significant problems." *See, e.g.*, R. at 115, 118, 121, 123, 124, 126, 128. Furthermore, as the ALJ noted, these records contain repeated notes that there were "no residua" from the head traumas. *See, e.g.*, R. at 116, 121, 123, 124. These records also report that plaintiff "recovered from [the first head injury] without complications" and that "there is no reasonable possibility that he has any cerebral injury." R. at 124, 128.

From this record, the ALJ concluded that Dr. Rivera's and Mr. Quakenbush's assessments of the plaintiff and their findings regarding the severity of his limitations were not supported. R. at 19-20. It is true that the record is less than pellucid as to the source of plaintiff's reported mental impairments. In fact, Mr. Quakenbush stated in the same record both that "[t]he patient apparently has had multiple head injuries resulting in his apparent[ ] learning disabilities" and that there were no residua from his previous head traumas. R. at 116. Reasonable minds could differ as to the implications of these statements. I find that there is substantial evidence for the ALJ's determination that there is not evidence in the record to support a physical source of the disability.

However, simply because the physical source of plaintiff's mental impairments may be discounted, such discounting does not permit the ALJ to ignore altogether Dr. Rivera's and Mr. Quakenbush's opinions regarding the existence and severity of plaintiff's mental impairments.

"An ALJ should generally, give more weight to opinions from claimant's treating sources." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks, alteration marks, and omission marks omitted); *see* 20 C.F.R. § 416.927(d)(2).

The opinions of treating physicians can be entitled to controlling weight. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); 20 C.F.R. § 416.927(d)(2). In determining whether to afford controlling weight to a treating source opinion, the ALJ

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Langley*, 373 F.3d at 1119 (quoting *Watkins*, 350 F.3d at 1300) (alteration marks omitted); *see also* 20 C.F.R. § 416.927(d)(2).

Even when not entitled to controlling weight, however, treating medical source opinions are not completely discounted as a matter of course. *See Langley*, 373 F.3d at 1119; Social Security Ruling 96-2p, 1996 WL 374188. Instead they "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927 . . . [:]

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01; *see* 20 C.F.R. § 416.927(d); Social Security Ruling 96-2p, 1996 WL 374188.

"After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion."

10

*Watkins*, 350 F.3d at 1301 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2))

(internal quotation marks and alteration marks omitted).  Furthermore, "if the ALJ

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so."  *Id.* (internal quotation marks omitted).

There is no indication that the ALJ considered the six factors cited above with

respect to the opinions of Dr. Rivera and Mr. Quakenbush.  Instead, the ALJ summarily

rejected their opinions as not supported by the record.  As noted above, the inquiry as

to whether a medical opinion is supported by the record is only the first step in the

analysis.  It pertains to the question of whether to give controlling weight to a treating

physician's opinions.  After determining that the opinions are not supported by the

record, the ALJ then must apply the six factors from § 416.927 to determine the weight

to which the opinions are entitled.  Furthermore, the ALJ's perfunctory dismissal of Dr.

Rivera's and Mr. Quakenbush's opinions is inadequate in light of the command from

*Watkins* that "[a]fter considering the pertinent factors, the ALJ must give good reasons

in the notice of determination or decision for the weight he ultimately assigns the

opinion."  350 F.3d at 1301.

The Commissioner defends the ALJ's conclusion regarding the opinions of Dr.

Rivera and Mr. Quakenbush by arguing that medical source opinions on the question of

disability are not dispositive.  *See Castellano v. Sec'y of Health & Human Servs.*, 26

F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. 416.927(e)(1).  However, the ALJ may not

simply ignore medical source opinions regarding disability without analysis.  *See*

*Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir. 1988).  Furthermore, the

Commissioner's argument does not account for the fact that the ALJ undertook no discussion of the other assessments made by Dr. Rivera and Mr. Quakenbush.  For example, the ALJ makes no mention of the findings and notations regarding plaintiff's apparent anxiety, memory loss, slow mentation, and anger issues.  *See* R. at 115, 116, 126, 128, 172, 177, 178, 179.  The ALJ also has not accounted for Dr. Rivera's finding that "[d]ue to diminished cognitive functioning, Mr. Medina would be able to perform only menial tasks and may not be able to function for extended periods of time," R. 226, or Dr. Rivera's endorsement of Dr. Madsen's assessments regarding plaintiff's impairments, R. at 250.

While 20 C.F.R. § 416.927(e)(2) reserves the ultimate decision regarding the nature and severity of impairments to the Commissioner, the Commissioner still must account for opinions such as Dr. Rivera's in some substantive way in arriving at that decision.  Because the ALJ has not done so in his opinion, this case is properly remanded for determinations in this regard.  *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . . and whether he applied the correct legal standards to arrive at that conclusion.").

### 2. The State Consultative Examiner's Opinion (Dr. Madsen)

In his decision, the ALJ noted that Dr. Madsen, the State consultative examining doctor, diagnosed plaintiff with "bipolar disorder, circular type, depressed; borderline intellectual functioning; status post head injuries; status post stab wound to the heart; migraine headaches and swelling of the left arm with a global assessment of 50."  R. at

12

20; *see also* R. at 133.  In the same report, dated January 2004, Dr. Madsen also

concluded that plaintiff

> is functioning in the borderline range of intelligence.  He has a history of
> ADHD and history of multiple forehead injuries.  He has a history of stab[ ]
> wound to the heart.  He has a history of special education with learning
> disability.  His ability to do work-related activities would be impaired.  He
> would have difficulty maintaining a regular work schedule, and focusing
> and concentrating on work.  His learning disability and level of cognitive
> functioning would also interfere and limit the types of work that he can do.
> He should be able to handle his own funds.

R. at 133.

The ALJ indicated that he "accord[ed] no weight to Dr. Madsen's evaluation and

assessment . . . ."  R. at 20.  The ALJ concluded that "[t]he entire evaluation, except for

the IQ testing, appears to be based entirely on less than factual statements made by

the claimant."  R. at 20.  By way of example, the ALJ noted that Dr. Madsen appears to

have taken at face value plaintiff's inaccurate report that he was stabbed in the heart.

R. at 20.  In reality, the record shows that plaintiff was stabbed in the chest near the

heart, and even though his treating physicians feared that his heart and pericardium

may have been punctured, tests confirmed that the injury was not that severe.  *See* R.

at 106-114.

The ALJ's invocation of this example to invalidate Dr. Madsen's mental

evaluation is improper.  Dr. Madsen had no occasion or need to verify the extent of

plaintiff's stab wound for the purposes of the mental examination.  Furthermore,

although the ALJ neglects to mention this, Dr. Madsen's recitation of this purported

injury acknowledged that his diagnosis stemmed solely from plaintiff's statements,

noting that it was "as indicated by the client."  R. at 133.  Dr. Madsen's conclusions

regarding plaintiff's mental impairments or GAF score do not include such a qualification.  Therefore, the ALJ's use of the report of the chest injury to undermine Dr. Madsen's entire opinion is inappropriate.

The ALJ also criticizes Dr. Madsen's evaluation because "[t]he only part of Dr. Madsen's conclusion that might have any basis in fact, would be the statement that the claimant's intellectual functioning was in the borderline range, and this is supported by objective testing (Wechsler Adult Intelligence Scale - Third Edition) and not based solely on statements made by the claimant."  R. at 20.  This conclusion is similarly untenable.  The ALJ apparently is requiring additional standardized testing for there to be a supportable diagnosis of a mental impairment; this does not comport with the law in this circuit.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[W]e note that a psychological opinion may rest either on observed signs and symptoms or on psychological tests . . . ." (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B))); *see also Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished opinion) ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" (citing *Robinson*, 366 F.3d at 1083)).  Therefore, the ALJ's rejections of Dr. Madsen's opinions cannot be defended on their stated grounds.

The ALJ also dismissed Dr. Madsen's conclusion that plaintiff had a Global Assessment of Functioning ("GAF") score of 50.  A GAF "is for reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text

14

Revision 2000).  The Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") describes a person with a score between 41 and 50 as having "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000) (bold typeface in original).

The ALJ, finding no evidence in the record of suicidal ideation, severe obsessional rituals, frequent shoplifting, or serious impairment in social, occupational, or school functioning, declared Dr. Madsen's calculation of a GAF score of 50 to be unsupported.  The ALJ's conclusion is flawed for at least two reasons.  First, broadly speaking, an ALJ is not permitted to supplant the professional medical opinion of a practitioner with his own.  *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996); *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987); *see also Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005) (unpublished opinion).  Second, the DSM-IV itself warns against the ALJ's analysis.  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text Revision 2000) xxxii ("The diagnostic categories, criteria, and textual descriptions are meant to be employed by individuals with appropriate clinical training and experience in diagnosis.  *It is important the DSM-IV not be applied mechanically by untrained individuals*." (emphasis added)).  Therefore, the ALJ's attempt at discrediting Dr. Madsen's GAF score calculation by diagnosing the plaintiff anew is improper and constitutes reversible error.

On August 24, 2005, following additional testing and evaluation, Dr. Madsen issued an updated report which amended some of the text from the earlier report and added a mental RFC evaluation of plaintiff.  R. at 235-40.  Dr. Madsen's diagnoses remained the same, but his conclusions changed somewhat.  R. at 238.  For example, Dr. Madsen added a sentence stating that plaintiff's "IQ scores are in the borderline range and his memory scores are in the low average to average range."  R. at 238.  Dr. Madsen also altered his previous conclusion that plaintiff's "ability to do work-related activities would be impaired" to note that the impairment was caused "mainly by the bipolar disorder."  R. at 238.

The ALJ explained that he "accord[ed] no weight to this assessment, for the same reasons stated above, it appears to be based almost entirely on statements made by the claimant with no supportive facts or findings."[3]  R. at 20.  Rather than discrediting the specific conclusions in Dr. Madsen's report and RFC determination through citation to contrary evidence in the record, the ALJ denied them wholesale.  Such an approach is improper.  *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (noting that an ALJ must consider the opinion of an non-treating, examining physician and "provide specific, legitimate reasons for rejecting it").  On remand, the ALJ shall reconsider Dr. Madsen's opinions and, should the ALJ decide to reject them anew, provide specific and legitimate reasons for doing so.

---

[3] This conclusion also is difficult to reconcile with the ALJ's adoption of Dr. Wanstrath's report which, as discussed below, is almost entirely devoid of supportive facts or findings.

### *3.   The State Record Examiner's Opinion (Dr. Wanstrath)*

After indicating that he afforded little or no weight to the opinions of Dr. Rivera,

Mr. Quakenbush, and Dr. Madsen, the ALJ indicated that he placed "considerable

weight" on the opinions of the state disability examiner, Dr. Wanstrath.  R. at 20, 22.

The Social Security regulations offer ALJs guidance on how to evaluate medical

opinions relative to the professional's relationship with the patient.  For example,

> [g]enerally, [ALJs] give more weight to opinions from [the claimant's]
> treating sources, since these sources are likely to be the medical
> professionals most able to provide a detailed, longitudinal picture of [the
> claimant's] medical impairment(s) and may bring a unique perspective to
> the medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(d)(2); *see Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.

2004).  Furthermore, "[g]enerally, [ALJs] give more weight to the opinion of a source

who has examined [the claimant] than to the opinion of a source who has not examined

[the claimant]."  20 C.F.R. § 416.927(d)(1); *see Robinson*, 366 F.3d at 1084 ("[T]he

opinion of an agency physician who has never seen the claimant is entitled to the least

weight of all.").  However, the rules and regulations, at times, permit an ALJ to rely more

heavily on a non-examining source than on treating or examining sources:

> In appropriate circumstances, opinions from State agency medical and
> psychological consultants and other program physicians and
> psychologists may be entitled to greater weight than the opinions of
> treating or examining sources.  For example, the opinion of a State
> agency medical or psychological consultant or other program physician or
> psychologist may be entitled to greater weight than a treating source's
> medical opinion if the State agency medical or psychological consultant's
> opinion is based on a review of a complete case record that includes a
> medical report from a specialist in the individual's particular impairment
> which provides more detailed and comprehensive information than what
> was available to the individual's treating source.

17

Social Security Ruling 96-6p, 1996 WL 374180, at *3.

The ALJ in the present case has not sufficiently explained his decision to elevate the non-examining source over the treating and examining sources.  Dr. Wanstrath's opinion is the most cursory and incomplete opinion in the record.  R. at 136-53.  Dr. Wanstrath used a check box form with infrequent notations and no indication of the type or source of the evidence on which he relied.  *Cf. Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("In comparison with the objective tests and measurements described by [treating medical sources] in support of their diagnosis . . . , [the consulting physician's] report in this regard consists solely of boxes checked on the Secretary's form to indicate his conclusion . . . .  Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.").

Furthermore, Dr. Wanstrath did not review the entire record.  Because Dr. Wanstrath does not cite to specific evidence, it is not clear what he reviewed.  For example, his evaluation form and conclusions are dated January 23, 2004.  R. at 136-53.  Dr. Madsen's first opinion was transcribed less than a week earlier, on January 17, 2004.  Although Dr. Wanstrath mentions IQ scores that coincide with those ascertained by Dr. Madsen, there is no direct evidence that Dr. Wanstrath had access to Dr. Madsen's examination report and conclusions.  It is clear, however, that Dr. Wanstrath could not have incorporated Dr. Madsen's second report, issued on August 24, 2005, more than a year after Dr. Wansrath's January 23, 2004 report.  *See* R. at 235-240.

The same is true for Dr. Rivera's and Mr. Quakenbush's subsequent opinions.  *See* R. at 225-26, 241-49.

Because Dr. Wanstrath's opinion was based on an incomplete record and offers only a superficial review, the ALJ must have a specific and compelling reason for placing it above the treating and examining opinions.  The ALJ's opinion does not provide such reasoning, and I am not permitted to conjecture on his behalf.  *Cf. Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision.").  As a result, the ALJ's decision to give significant weight to Dr. Wanstrath and minimal, if any, weight to Dr. Rivera, Mr. Quakenbush, and Dr. Madsen cannot be affirmed.

Plaintiff also complains not only that consultative examiner, Dr. Wanstrath, was given too much weight in the ALJ's analysis, but that the ALJ left out a significant limitation proffered by Dr. Wanstrath.  The ALJ noted that Dr. Wanstrath found that plaintiff "could not work closely with supervisors or co-workers," but "could accept supervision and related [sic] to co-workers if contact was not frequent or prolonged."  R. at 22.  This limitation did not appear in the ALJ's final RFC determination, nor does the ALJ discuss why this limitation was omitted.  An independent review of the record does not reveal evidence supporting this omission.

Therefore, the ALJ's RFC determination is reversed.  On remand, the ALJ shall reassess plaintiff's RFC, citing substantial evidence to support his determination and explaining why he rejects any of the other relevant evidence in the record.  *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted

evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

### 4. The ALJ's Use of the Grids

The Commissioner admits in his response brief that the ALJ may not rely on the Grids at step five when a claimant, such as the plaintiff in the present case, has mental limitations. *See* Def.'s Resp. Br. [Docket No. 13] at 18 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991)). The Commissioner also admits that the ALJ failed to cite other evidence in the record regarding plaintiff's ability to perform work available in the national economy. The Commissioner contends that these errors were harmless. *See* Def.'s Resp. Br. at 19 (citing *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995)). The Commissioner argues that the VE's testimony during the hearing before the previous ALJ provides substantial evidence to support the most recent step-five conclusion regarding available work. The VE testified during that earlier hearing that a person with a very similar RFC to the one the current ALJ settled upon would be able to work in at least three jobs of significant availability. *See* R. at 269-70.

I agree that the ALJ erred by relying on the Grids and not citing to other evidence in the record. *See Hargis*, 945 F.2d at 1490 ("The grids should not be applied conclusively in a particular case, however, unless the claimant could perform the full range of work required of that category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range. Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." (internal citation omitted)). I disagree, however,

that this error was harmless.  As discussed above, the ALJ's RFC determination was deficient.  There are additional limitations and impairments that need to be accounted for in the step-five determination.  The VE testimony from the first ALJ hearing does not properly encompass all of these considerations and therefore cannot be relied upon to conclude that work exists in the national economy which plaintiff could perform. Therefore, the ALJ's determination at step five is reversed.  On remand the ALJ shall revisit the step-five determination and obtain sufficient evidence to support his or her finding in that regard.

## III.  CONCLUSION

For the reasons stated above, the Commissioner's finding that plaintiff is not disabled under the Act is REVERSED.  This case is REMANDED to the Commissioner for additional proceedings in accordance with this Order.


DATED June 5, 2009.

BY THE COURT:


s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge

21